Townsend *v.* Meader.

## True W. Townsend *vs.* Henry Meader.

*Equity of redemption—return of sale of.   Judgment—entering up.*

It is not necessary that an officer's return of a sale of an equity of redeeming land from a mortgage should specify the day or hour or particular place of the sale.

It is sufficient in this respect if it appear by the return that the time required by the statute intervened between the time of giving the notice and that of making the sale.

Thus, a return of a sale of an equity of redeeming land situated in Gardiner, is sufficient as to notice which recites that " on the first day of September, 1858, I gave notice in writing of the time and place of sale to the within named" debtor, "in person, and I gave public notice of the time and place by posting up notifications thereof in two public places in ... two adjoining towns, and also in a public place in " Gardiner, " thirty days before the time of sale; and I also caused an advertisement of the time and place of sale to be published three weeks successively before the day of sale in the *Northern Home Journal,* a public newspaper printed in" Gardiner, " in said county; and afterwards, on the sixth day of October, at a public auction held at the Gardiner hotel, in the city of Gardiner, I sold," etc.

By virtue of the 35th Rule of Court, unless the prevailing party, within three months after judgment is ordered, files all papers and documents necessary to enable the clerk to make and enter the judgment and complete the record, judgment cannot be afterwards recorded unless, upon petition and notice to the adverse party, the court, at a subsequent term, order it.

Hence, if the defendant be defaulted in an action upon a mortgage, and the plaintiff refuse to file the papers necessary to enable the judgment to be made up, an entry upon the docket of "judgment as on a mortgage," made at the instigation of the defendant, after default and adjournment of the court, is not binding upon the plaintiff.

On report.

Writ of entry, whereby the plaintiff claims to recover possession of premises described in the writ by virtue of a sale of the defendant's right in equity to redeem them from a mortgage held by the plaintiff as assignee.

*W. M. Stratton,* clerk of the courts for this county, called by the plaintiff, testifies that he made up the judgment, in *Townsend* v. *Meader,* by assessing the amount due on the mortgage, at the request of Mr. Clay, the defendant's counsel in that case, after the court adjourned, and after giving plaintiff's counsel notice ; that

witness understood plaintiff's counsel declined to furnish vouchers and have the amount assessed. No notes or mortgage were produced or filed.

On cross-examination he further testified, that the judgment on the mortgage was made at the time fixed in the notice to plaintiff's counsel; that some papers were furnished by the defendant's counsel, among which was Mr. Thompson's statement of the amount due; and that neither the plaintiff nor his counsel was present.

*L. Clay,* called by the defendant, testified that he made a tender to plaintiff's counsel, on May 16, 1868, of $109, being the amount due and assessed on the mortgage now in suit; that he declined to accept it; that witness understood the plaintiff declined to file the note and mortgage, and to have the amount assessed.

The remaining facts are stated in the opinion.

*N. M. Whitmore, 2d,* for the plaintiff.

*A. Libby,* for the defendant.

TAPLEY, J. This is a real action. The premises in question were formerly owned by the tenant. On the 17th day of January, 1848, he mortgaged the same to one John Plaisted, and on the 22d day July, 1851, he again mortgaged them to one Robert Thompson, subject to the Plaisted mortgage. On the 12th day of March, 1855, Plaisted assigned his mortgage to said Thompson. On the first day of September, 1858, both mortgages apparently outstanding, the plaintiff duly seized the right in equity which the defendant had of redeeming the premises from the existing mortgages, and subsequently sold the same at public auction to the plaintiff. On the eighth day of March, 1864, Thompson duly assigned to this plaintiff the mortgage given him by defendant, and on the 22d day of November, 1864, in consideration of the payment of the mortgage originally given to Plaisted, Thompson, the assignee, discharged it. By whom this latter mortgage was paid does not appear. This being discharged left the legal estate in the premises in the present plaintiff, and entitles him to recover.

By the terms of the report " the court is to enter such judgment as the law requires."

It is suggested that the officer's return upon the execution does not show a compliance with the requirement of the statute in making sale of the equity, in that it does not state the time and place of sale.

The officer in his return states that he gave the defendant, Meader, notice of the time and place of sale, and the manner of giving the notice. It is not necessary that the return should show the day or hour or particular place which was mentioned in the notice, if it appear that the time required by law to intervene between the notice and sale did intervene. This sufficiently appears in the return,—that the notice was posted thirty days before the time of sale. It appears that afterwards, and on the sixth of October, he did make a sale at the Gardiner hotel, in the city of Gardiner. The time of day when sold does not appear, but whatever that time of day was, it appears in a former part of the return the defendant, Meader, had been notified of. It was the time and the place of sale he was notified of. The officer does not say in his return that the notification was of a time and place of a proposed sale, but that he did in fact notify him of the time and the place of sale, that is, he notified him of the time and the place when and where the sale actually was made. It was not a time and place when and where the sale did not take place, but it was the time and place of sale. The return in this particular states a fact; it does not undertake to recite the notice or attempt to give its contents. It states as matter of fact that he gave notice of the time and place of the sale. If he had recited the notice, and then concluded the return as it now appears, it might have been suggested as now, that it does not necessarily appear that the sale took place at the time named in the notice. That objection does not now appear, for all we know of the time and place actually fixed in the notice is the time and place when and where the sale was made, and these being necessarily identical, the objection is without foundation in fact, whatever might have been its legal force if well taken.

By a copy of a docket entry furnished us, it appears that at the March term, 1868, an action was entered in the name of *True W. Townsend* v. *Henry Meader*, which was defaulted, and that at the instance of the debtor, the clerk entered up judgment as on mortgage, the plaintiff having declined and refused to furnish vouchers. What this action was founded upon, does not appear except as gleaned from the arguments of counsel. It, however, appears that whatever it was, the proceedings after default were had at the instance of the defendant and after court adjourned.

By the 35th rule of court, it is " the duty of the prevailing party in every suit forthwith to file with the clerk all papers and documents necessary to enable him to make and enter judgment and to complete the record of the case ; and if the same are not so filed within three months after judgment shall have been ordered, the clerk shall make a memorandum of the fact on the record ; and the judgment shall not be afterwards recorded unless upon a petition to the court at a subsequent term, and after notice to the adverse party, the court shall order it to be recorded, . . . and the judgment when so recorded shall be, and be considered in all respects, as a judgment of the term in which it was originally awarded."

It appears by the report in this case, that no papers were filed in this case by the plaintiff, and that instead of following the rule provided for such cases, after the adjournment of the court such judgment was entered up as appeared to be proper upon the evidence adduced by the defendant after he had been defaulted. That such proceedings were unauthorized is quite clear. The course pointed out by the rule should have been pursued. No such *ex parte* proceedings can bind the plaintiff. If the action was upon a mortgage, and the plaintiff refused to file the necessary papers to complete and make up the record, no record would be made up, and the mortgager could at any time, if the right of redemption existed, tender the amount due and save his rights. It is rather a novel proceeding for a defendant after default to fix the kind and amount of judgment which is to be rendered against him, and that, too, upon other matters than the legitimate evidences of the plaintiff's claim.

The deed of mortgage, if introduced alone, would entitle the defendant upon motion to have judgment entered as on mortgage. If with the mortgage, the sheriff's deed, and his proceedings upon the execution had been introduced, the defendant would not have been entitled to such judgment. All these matters were within his own knowledge, and matters of record. In undertaking to represent the plaintiff's title, he did not do it truly, but untruly, and knowingly did so, to obtain a judgment he was not by law entitled to. Not only was the proceeding irregular, but a fraud upon the plaintiff and upon the court so far as it could be affected by it. The haste made to make a tender of the amount the defendant furnished the clerk is only another evidence of a design to accomplish an end which could not have been attained in open court.

The defendant has had no legal or equitable title in the premises since Oct. 6, 1859, one year after the purchase by the plaintiff of the equity. This was four years and a half before the proceedings referred to. We are not prepared to hold that these proceedings revested the mortgager with an estate he had been so long devested of.

No controversy is made as to the *mesne profits*, the only testimony being that of the deputy-sheriff Berry. The annual value, after deducting all lawful taxes and necessary and ordinary repairs, he testifies was about $80 per year from Oct. 6, 1862, to Oct. 6, 1868, the date of plaintiff's writ. There must be

> *Judgment for the plaintiff for possession, and for*
> *the sum of $480 for mesne profits, with interest*
> *upon that sum from the date of plaintiff's writ.*

APPLETON, C. J.; CUTTING, KENT, DICKERSON, and BARROWS, JJ., concurred.